UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:18-CR-89-HAB |
| | ) | |
| LARRY R. RATLIFF | ) | |

## OPINION AND ORDER

Larry R. Ratliff ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 63).[1] The Government filed its response to his Motion on June 24, 2020. (ECF No. 67). For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On September 26, 2018, the Defendant was charged in a single count Indictment for bank robbery by force, violence or intimidation, in violation of 18 U.S.C. §2113(a). These charges stemmed from events in August 2018, when the Defendant entered a credit union in Fort Wayne, Indiana and threatened the tellers with physical harm if they did not turn over bank funds. (Presentence Investigation Report, ¶¶ 10–22, ECF No. 56). After pleading guilty on February 21, 2019 pursuant to written plea agreement with the government, Defendant was sentenced to 70 months of imprisonment and three years of supervised release. (ECF No. 62). The Court rejected the recommended sentence in the Defendant's plea agreement for a sentence of 41 months

---

[1] To the extent the Defendant was seeking a reduction pursuant to the First Step Act ("FSA") and pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to his motion. (ECF No. 64). On June 10, 2020, the FCD filed a Notice indicating that it would not be appearing on the Defendant's behalf. (ECF No. 66). Consistent with the Court's order, the Government responded to Defendant's *pro* se motion. (ECF No. 67).

imprisonment. The Defendant has been housed at FCI Terre Haute with an anticipated release date in September 2023.

## DISCUSSION

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motion, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further, and he has not done so here. In his motion, the Defendant states that he "submitted a request to [his] Unit Team Manager to be placed on home detention and was denied [sic] appealed to the Warden and did not receive a response." (ECF No. 63 at 2). The Government argues that this is insufficient to establish that he exhausted his administrative remedies because "[a] request for transfer to home detention is not a request for compassionate

release" and thus, even if the Defendant's statements are true, "they do not amount to fulfillment of the exhaustion requirement." (ECF No. 67 at 4).

This Court has previously held that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, *see United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 2079293, at *1 (N.D. Ind. Apr. 30, 2020); see also *United States v. Santiago*, No. 2:16-CR-174-JVB-JEM, 2020 WL 3396899, at *2 (N.D. Ind. June 19, 2020); *United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020); *United States v. Cox*, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020). Thus, the Defendant's motion is properly adjudicated in this Court regardless of whether he has or has not completed the statutory exhaustion process.²

This Court has repeatedly declined to weigh in on whether the exhaustion requirement is a mandatory one or subject to equitable considerations, such as waiver. *See United States v. Russell,* No. 1:14-CR-6-HAB, 2020 WL 2989160, at *3 (N.D. Ind. June 4, 2020) ("District courts across the country are struggling daily with whether strict compliance with the exhaustion provision is necessary, especially in light of the serious risks associated with COVID-19.") (listing cases). Because of the absence of clear precedent on exhaustion, this Court's preference has been to "put to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant has presented extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020); *Council*, 2020 WL 3097461, at *5. This case is no different.

---

² The Court is aware that the Government resists the argument that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and has, in all other compassionate release cases in this division, reserved its right to contest this issue.

3

The Defendant asserts that he has maintained a close relationship with his family while incarcerated and has been "a model prisoner with no conduct reports." He also asserts that "my family needs me not only financially but mentally as well," and he represents that his mother has been diagnosed with leukemia. He indicates that if he was released to home detention, he "would not pose a danger to the public." (ECF No. 63 at 1).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the

4

defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

In this case, the Defendant's filings give this Court very few reasons, let alone extraordinary or compelling ones, to justify granting his motion. The Defendant has not articulated any medical condition that makes him more susceptible to the virus nor has he provided any basis for the Court to conclude that he suffers from a serious condition that increases the likelihood of severe consequences from COVID-19.

Defendant has identified some family circumstances that he hopes would warrant his release, namely the diagnosis of his mother with leukemia. He is understandably concerned about her condition and fears he "will not be able to spend the last years" of her life with her.

While the Court is sympathetic to the concerns of the Defendant regarding the health of his aging mother, "family circumstances that would amount to an extraordinary and compelling reason [for compassionate release] are strictly circumscribed under the [applicable United States Sentencing Commission] policy statement and do not encompass providing care to elderly parents." *United States v. Goldberg*, No. 12-180 (BAH), 2020 WL 1853298, at *4 (D.D.C. April

13, 2020); *see also* U.S.S.G. § 1B1.13 cmt. n.1(C) (limiting family circumstances that may be considered an adequate reason for a sentence reduction to the need to care for the defendant's minor children or a spouse or registered partner, when no other caregiver is available). Thus, Courts have not considered a parent's health as an "extraordinary and compelling" reason under 18 U.S.C. § 3582(c)(1)(A), *see, e.g.*, *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *10 (D. Nev. June 2, 2020) (denying defendant's compassionate release motion to care for his widowed mother's deteriorating health); *Goldberg*, 2020 WL 1853298, at *4 (denying compassionate release motion and stating that "a desire to care for one's elderly parents does not qualify as an 'extraordinary and compelling' reason for release" under 18 U.S.C. § 3582(c)(1)(A)); *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 15, 2019) (denying compassionate release motion to care for defendant's ill mother because "[m]any, if not all inmates, [have] aging and sick parents"). Accordingly, this factor does not aid the Defendant's cause.

As for his confinement, as of July 16, 2020, FCI Terre Haute is reporting 2 COVID-19 positive inmates, 6 recovered inmates and one inmate death.[3] Thus, there is no evidence to suggest that the conditions at FCI Terre Haute place him at a significant risk. *See, Melgarejo*, , 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus."), *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

---

[3] https://www.bop.gov/coronavirus/

Moreover, the Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The minimal number of cases at this institution is a testament to the BOP's mitigation and safety efforts.

Finally, with respect to the § 3553(a) factors, the Court observes that the Defendant has served only 22 months of his 70-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. In fact, at sentencing, the Court specifically rejected a lighter sentence that was in the parties' plea agreement calling for the imposition of 41 months. The Court found that the proposed sentence was insufficient to comport with the § 3553(a) factors and sentenced Defendant to 70 months. Thus, the Court finds that the significant sentence reduction Defendant seeks, which is even below that which the Court previously rejected, would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 63) is DENIED.

So ORDERED on July 21, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

7